375 Ark. 379

**LARRY HOBBS FARM EQUIPMENT, INC. d/b/a Hobbs Farm Implement and Hobbs Farm Equipment, Appellant,**

v.

**CNH AMERICA, LLC d/b/A Case IH, successor in interest to DMI, Inc., Appellee.**

No. 08–1056.

Supreme Court of Arkansas.

Jan. 22, 2009.

Easley and Houseal, P.A., by B. Michael Easley, Forrest City, and Dady & Garner, P.A., by John D. Holland, Minneapolis, MN, for petitioner.

Foley and Lardner LLP, by Michael J. Lockerby, Washington, DC, and Brian W. McGrath, Milwaukee, WI, and Womack, Landis, Phelps & McNeill, P.A., by J.V. Phelps, Jonesboro, for respondent.

Friday, Eldredge & Clark, LLP, by Kevin A. Crass, Little Rock, and Peter B. Rutledge, Little Rock, for amici curiae Association of Equipment Manufacturers and National Association of Manufacturers.

JIM HANNAH, Chief Justice.

This case involves three questions of law certified to this court by the United States District Court for the Eastern District of Arkansas in accordance with Arkansas Supreme Court Rule 6–8 (2008) and accepted by this court on September 18, 2008. *See Larry Hobbs Farm Equip., Inc. v. CNH Am., LLC*, 374 Ark. 268, 287 S.W.3d 550 (2008) (per curiam). The questions certified are the following:

1. Under the facts of this case, whether the market withdrawal of a product or of a trademark and trade name for the product constitutes "good cause" to terminate a franchise under Arkansas Code Annotated § 4–72–204(a)(1).

2. Under the facts of this case, whether liability under Arkansas Code Annotated § 4–72–310(b)(4) is created when a manufacturer terminates, cancels, fails to renew, or substantially changes the competitive circumstances of the dealership agreement based on re-branding of the product or ceasing to use a particular trade name or trademark for a product while selling it under a different trade name or trademark.

3. Under the facts of this case, whether the sole remedies for a violation of the Arkansas Farm Equipment Retailer Franchise Protection Act (AFERFPA) are: (1) the requirement

that the manufacturer repurchase inventory for a termination without good cause, and (2) damages, costs, and attorneys' fees that result from the failure to purchase inventory as provided in Ark.Code Ann. § 4–72–309, or whether other remedies are also available.

As to the first question, we conclude that the answer is no. As to the second question, we also conclude that the answer is no. With respect to the third question, we conclude that other remedies are available.

The certified questions arise from an action filed in district court on April 17, 2008, by Hobbs Farm Equipment (Hobbs) after the termination of a dealer agreement between Hobbs and CNH America (CNH). CNH moved to dismiss the complaint, and the district court granted the motion to dismiss on all claims except the claims pertaining to the legal issues certified to this court. For purposes of CNH's motion to dismiss and the district court's certification order, the district court assumed the following facts to be true.

Hobbs and DMI, Inc., entered into an agreement enabling Hobbs to sell DMI products in June 1993. In early 1995, Hobbs executed a new dealer agreement with DMI, which enabled Hobbs to be a nonexclusive dealer of DMI products, specifically its tillage and soil management equipment, in its trade area.

In November 1998, Case Corporation, a predecessor of CNH, acquired DMI. Both Hobbs and each of DMI's successors, including CNH, continued to perform under the 1995 agreement until August 2007.

According to the complaint, in late 2004 or 2005, CNH began to supply Hobbs's competitor, Heartland Equipment, Inc., of East Arkansas (Heartland), with the DMI tillage and soil management equipment that Hobbs Farm Equipment had distributed since 1993. However, instead of bearing the DMI trademark and trade name, the equipment supplied to Heartland bore the Case IH trademark and name. Case IH is a trademark owned by and the name of a division of CNH. The equipment supplied to Heartland was painted red like other Case IH products, whereas DMI products were painted blue. Stated differently, CNH engaged in dual branding of identical tillage and soil management equipment originally distributed in blue paint under the DMI brand name but, beginning in 2004 or 2005, also distributed in red paint under the Case IH brand name.

On August 14, 2007, Hobbs received a letter from CNH that included the following:

> CNH America LLC ("The Company") wishes to provide you with advance notice of its decision to withdraw from the DMI-branded tillage business effective in 2008. As a result, Hobbs Farm Equipment Co. Inc.'s last ordering period for wholegoods will run through August 31, 2007. After that date, the Company will no longer accept orders for any DMI-branded tillage wholegoods products. However, Hobbs Farm Equipment Co. Inc. will be able to continue to purchase DMI-branded replacement parts through August 31, 2008.

> The Company will continue to provide you with retail programs throughout 2007 and the first half of 2008 to assist you in retalling [sic] these products prior to August 31, 2008. If any DMI-branded wholegoods remain at your dealership by that date, the Company will repurchase those products in accordance with the terms of your dealer agreement and company policy, or state law. The Company will also repurchase your re-

maining DMI replacement parts according to state law or company policy.

CNH decided that effective August 31, 2008, it would no longer sell equipment bearing the DMI trademark and trade name but would do so under the Case IH trademark and trade name.

### Good Cause

In its brief before us, Hobbs contends that, under the plain language of the Arkansas Franchise Practices Act (AFPA), specifically, Arkansas Code Annotated section 4–72–204(a)(1) (Repl.2001), neither the market withdrawal of a product nor the withdrawal of a trademark or trade name for a product constitutes "good cause" to terminate a franchise. For its part, CNH contends that the AFPA's requirement of "good cause" for terminating an Arkansas franchise does not prevent market withdrawal. CNH states that, while the AFPA prohibits discriminatory termination of a franchise, the Act does not prohibit nationwide discontinuation of a product line or brand.

■■■ The basic rule of statutory construction is to give effect to the intent of the legislature. *Ward v. Doss*, 361 Ark. 153, 205 S.W.3d 767 (2005). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* We construe the statute so that no word is left void, superfluous or insignificant, and we give meaning and effect to every word in the statute, if possible. *Id.*

Arkansas Code Annotated section 4–72–204(a)(1) provides that "[i]t shall be a violation of [the AFPA] to terminate or cancel a franchise without good cause." Pursuant to Arkansas Code Annotated section 4–72–202(7) (Repl.2001), "good cause" is defined in the AFPA as:

(A) Failure by a franchisee to comply substantially with the requirements imposed upon him or her by the franchisor, or sought to be imposed by the franchisor, which requirements are not discriminatory as compared with the requirements imposed on other similarly situated franchisees, either by their terms or in the manner of their enforcement; or

(B) The failure by the franchisee to act in good faith and in a commercially reasonable manner in carrying out the terms of the franchise; or

(C) Voluntary abandonment of the franchise; or

(D) Conviction of the franchisee in a court of competent jurisdiction of an offense, punishable by a term of imprisonment in excess of one (1) year, substantially related to the business conducted pursuant to the franchise; or

(E) Any act by a franchisee which substantially impairs the franchisor's trademark or trade name; or

(F) The institution of insolvency or bankruptcy proceedings by or against a franchisee, or any assignment or attempted assignment by a franchisee of the franchise or the assets of the franchise for the benefit of the creditors; or

(G) Loss of the franchisor's or franchisee's right to occupy the premises from which the franchise business is operated; or

(H) Failure of the franchisee to pay to the franchisor within ten (10) days after receipt of notice of any sums past due the franchisor and relating to the franchise.

■■ Hobbs points out that the franchise was not terminated for any of these reasons and that the plain language of the

statute, coupled with the canon of statutory construction *expressio unius est exclusio alterius,* prohibits an interpretation of the AFPA's list of circumstances constituting "good cause" for termination that includes circumstances not specifically listed in section 4–72–202. The phrase *expressio unius est exclusio alterius* is a fundamental principle of statutory construction that the express designation of one thing may be properly construed to mean the exclusion of another. *MacSteel v. Ark. Okla. Gas Corp.,* 363 Ark. 22, 210 S.W.3d 878 (2005).

Hobbs's argument is well taken. "Good cause" is clearly defined by the plain language of section 4–72–202(7). In that section, the General Assembly listed several examples of good cause for termination, and market withdrawal was not included as an example of good cause. Had the legislature intended to include market withdrawal as good cause for termination, it could have done so.

■ We also note that the United States Court of Appeals for the Fourth Circuit construed section 4–72–202(7) in *Volvo Trademark Holding Aktiebolaget v. Clark Machinery Co.,* 510 F.3d 474 (2007). In *Volvo,* the Fourth Circuit held that the enumerated occurrences in section 4–72–202 are the exclusive means by which a franchisor can terminate a franchise for "good cause." Decisions of the federal circuit courts are not binding on this court; however, we find the Fourth Circuit's interpretation of section 4–72–202 to be persuasive. The *Volvo* court wrote:

The Arkansas Act includes a list of eight occurrences that constitute "good cause" for termination or cancellation of a franchise. *See* Ark.Code Ann. § 4–72–202 (West 2007). The district court held, adopting Clark's position, that this list constituted the exclusive means by which a franchisor may terminate a

franchise for good cause under the Arkansas Act. Volvo acknowledges that it did not terminate Clark's Dealer Agreement for any of the specific reasons provided for in the Arkansas Act, but contends that those eight occurrences are not an exclusive list of what constitutes good cause for termination of a franchise. Appurtenant to this contention, Volvo maintains that its reasons for termination, i.e., "Volvoization" and "Dealer Rationalization," also constitute good cause for a franchise termination under the Arkansas Act.

As the district court aptly recognized, Volvo's contention presents an issue of statutory construction, and a federal court sitting in diversity is obliged to apply state law principles to resolve such a question, utilizing such principles as enunciated and applied by the state's highest court. *See Volvo Trademark,* 416 F.Supp.2d at 410 (citing *Cooper Distrib. Co., Inc. v. Amana Refrigeration, Inc.,* 63 F.3d 262, 274 (3d Cir.1995)). The Arkansas Supreme Court has not resolved the statutory issue raised by Volvo, and we are therefore obliged to interpret the Arkansas Act by applying the principles of statutory construction that would guide an Arkansas court in making such a decision. *See CTI/DC, Inc. v. Selective Ins. Co. of Am.,* 392 F.3d 114, 118 (4th Cir.2004).

The district court made a thorough explanation of its ruling on this issue. According to the applicable Arkansas legal principles, if a statute is clear, it is to be given its plain meaning, and courts are not to search for any legislative intent. *See Volvo Trademark,* 416 F.Supp.2d at 411 (citing *Hinchey v. Thomasson,* 292 Ark. 1, 727 S.W.2d 836 (1987)). Arkansas also subscribes to the legal principle of expressio unius est exclusio alterius, meaning " 'that the express designation

of one thing may properly be construed to mean the exclusion of another.' " *Id.* (quoting *Gazaway v. Greene County Equalization Bd.*, 314 Ark. 569, 864 S.W.2d 233, 236 (1993)).

Applying these controlling principles to the Arkansas Act, the district court concluded that good cause for termination of a franchise under the Act is limited to the eight occurrences specifically enumerated therein. *See Volvo Trademark*, 416 F.Supp.2d at 412. The court deemed the Arkansas Act to be clear on its face, and determined that the express designation of those eight occurrences precluded any other circumstance from constituting good cause for a franchise termination. *Id.* at 411. As a result, the court concluded that the Arkansas Supreme Court would have held that the "circumstances constituting 'good cause' for termination under the [Arkansas Act] are limited to those expressly designated in" the Act and, because Volvo's actions did not fall under one of the enumerated occurrences, it had terminated Clark's Dealer Agreement in violation of the Arkansas Act. *Id.* at 412, 416–17.

*Volvo*, 510 F.3d at 482–83 (footnote omitted).

■ We agree with the reasoning set forth in the *Volvo* decision. We hold that the plain language of the statute, along with the canon of statutory construction *expressio unius est exclusio alterius*, prohibits an interpretation of the AFPA's list of circumstances constituting "good cause" for termination that includes circumstances not specifically listed in section 4–72–202. Accordingly, we answer the first certified question in the negative. The market withdrawal of a product or of a trademark and a trade name for the product does not constitute "good cause" to terminate a franchise under Arkansas Code Annotated section 4–72–204(a)(1).

■ Before leaving this point, we note that in its brief before this court, CNH claims that by interpreting the statutory prohibition against termination of a franchise without "good cause" as not applying to market withdrawals, this court can avoid the prospect of a state-imposed "exit toll" that would raise Commerce Clause concerns. At our discretion, we answer questions of law certified to us by order of a federal court of the United States. *See* Ark. Sup.Ct. R. 6–8. The "exit toll" issue is not within the question of law we accepted, and we decline to address it.

*Liability Under Arkansas Code Annotated section 4–72–310(b)(4)*

The second question certified to this court is whether, under the facts of this case, liability under Arkansas Code Annotated § 4–72–310(b)(4) (Repl.2001) is created when a manufacturer terminates, cancels, fails to renew, or substantially changes the competitive circumstances of the dealership agreement based on rebranding of the product or ceasing to use a particular trade name or trademark for a product while selling it under a different trade name or trademark.

Section 4–72–310(b)(4) provides that it is a violation of the Farm Equipment Retailer Franchise Protection Act for a manufacturer to:

Attempt or threaten to terminate, cancel, fail to renew, or substantially change the competitive circumstances of the dealership agreement based on the result of a natural disaster, including a sustained drought in the dealership market area, labor dispute, or other circumstances beyond the dealer's control.

(Emphasis added.)

■ Thus, it is clear that section 4–72–310(b)(4) proscribes only *attempts* or

*threats* to terminate, cancel, fail to renew, or substantially change the competitive circumstances of the dealership agreement. *Actual* termination, cancellation, failure to renew, or substantially changing the circumstances of the dealership agreement are not addressed in this section; therefore, no liability is created for those actions under section 4–72–310(b)(4). Accordingly, we answer the second certified question in the negative and hold that no liability under section 4–72–310(b)(4) is created when a manufacturer terminates, cancels, fails to renew, or substantially changes the competitive circumstances of the dealership agreement based on rebranding of the product or ceasing to use a particular trade name or trademark for a product while selling it under a different trade name or trademark.

### Remedies Under the AFERFPA

The final question this court must consider is whether, under the facts of this case, the sole remedies for a violation of the AFERFPA are: (1) the requirement that the manufacturer repurchase inventory for a termination without good cause, and (2) damages, costs, and attorneys' fees that result from the failure to purchase inventory as provided in Arkansas Code Annotated section 4–72–309 (Repl.2001), or whether other remedies are also available.

Section 4–72–309 provides:

If any wholesaler, manufacturer, or distributor fails or refuses to repurchase any inventory covered under the provisions of this subchapter within sixty (60) days after shipment of the inventory, he or she shall be civilly liable for one hundred percent (100%) of the current net price of the inventory, plus any freight charges paid by the retailer, the retailer's attorney's fees, court costs, and interest on the current net price

computed at the legal interest rate from the sixty-first day after shipment.

Hobbs states that the 1991 amendments to the AFERFPA, adding section 4–72–310, created new rights not tied to a manufacturer's inventory repurchase rights. Hobbs avers that the AFERFPA contains two sets of rights for dealers—rights that exist during or after the term of the dealership agreement and rights that exist only upon termination of the dealership agreement. Hobbs further states that, while the legislature provided farm equipment dealers with new rights, the legislature failed to specify any particular remedy for violation of these new rights. Still, Hobbs asserts that it is not without a remedy because article 2, section 13 of the Arkansas Constitution requires that there be a remedy for every right created by the legislature. That section provides:

Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, and without purchase; completely, and without denial; promptly and without delay; conformably to the laws.

Ark. Const. art. 2, § 13.

▆▆▆▆ Hobbs correctly states the law, but it appears to suggest that this constitutional provision means that it is entitled to money damages. Article 2, section 13 provides that one wronged is entitled to a "certain remedy," but it does not state that the remedy must be in the form of money damages. "In the absence of a statutory provision expressly authorizing it, damages cannot be recovered by either party." *White River Land & Timber Co. v. Hawkins,* 128 Ark. 277, 279, 194 S.W. 9, 10 (1917). There is no language in section 4–72–310 authorizing money damages. Therefore, the remedies available under that section are limited to remedies other

than money damages, such as injunctive relief and declaratory relief. As such, we answer the third question in the negative. The sole remedies for a violation of the AFERFPA are not those provided in section 4–72–309; parties may also seek remedies other than money damages.

Certified questions answered.