2011 Ark. 505

Michael BAKALEKOS, James Bauldree, Randall Beers, Curtis Briggs, Darel Casteel, Dan Chandler, Mary Cook, Robert Cullison, James Dickson, David Ebinger, Jimmy Evans, Marty Garrison, John Hall, Fred Hopkins, David Hudson, Samuel Iverson, Ralph Jackson, Richard Jensen, Richard Jordan, Richard Kinsey, Robert Littleton, Jimmy Massie, Brian McClung, Mark Ross, Danny Sabo, Charles Simon, David Smith, Patrice Smith, Charles Speer, John Stafford, Stuart Sullivan, Patricia Swain, Raymond Timmons, Kevin Tindle, Charles Vint, Dwain Watson, Robert Wortham, and William Yeager, Appellants

v.

Brad FURLOW, Lee Harrod, Farris Hensley, Sara Lenehan, Mike Lowery, Albert Miller and Bruce Moore, in their Official Capacities as Trustees of The Policemen's Pension and Relief Fund of the City of Little Rock, Arkansas; and The Policemen's Pension and Relief Fund of the City of Little Rock, Arkansas, Appellees.

No. 11–526.

Supreme Court of Arkansas.

Dec. 1, 2011.

Gregory B. Graham and John Lindsay Burnett Jr., Little Rock, for appellants.

William Dean Overstreet, Little Rock, for appellees.

COURTNEY HUDSON GOODSON, Justice.

Appellants Michael Bakalekos, and others, appeal the circuit court's grant of summary judgment dismissing their complaint in which they mounted a multi-pronged challenge to an increase in benefits approved by appellee Policemen's Pension and Relief Fund of the City of Little Rock, Arkansas ("Fund"), acting through the members of its Board of Trustees, appellees Brad Furlow, Lee Harrod, Farris Hensley, Sara Lenehan, Mike Lowery, Albert Miller, and Bruce Moore (collectively "Board"). For reversal, appellants contend that the circuit court erred (1) in ruling that the additional payments were authorized by Arkansas Code Annotated section 24–11–102(a) (Repl.2002); (2) by failing to find that the statute represents an unconstitutional delegation of legislative authority; (3) by finding that the Board did not breach its fiduciary duties by increasing benefits to some but not all retirees; (4) in ruling that the statute, as applied, does not violate the Equal Protection Clause of the Arkansas Constitution; and (5) in finding that a portion of their claims are barred by the statute of limitations. As this appeal involves issues of statutory interpretation and a challenge to the constitutionality of a statute, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(1) and (b)(6). We affirm.

## I. *Factual Background*

The Fund, organized under the authority of Arkansas Code Annotated sections 24–11–101 to –438 (Repl.2002), is a municipal police pension and relief fund for certain policemen employed by the Little Rock Police Department. The Fund is considered "closed," meaning that its membership became fixed in 1983 when a replacement system was put in place for newer hires. Acting through its seven-member Board, the Fund disburses pension benefits; disability retirement benefits; death benefits; funeral benefits; additional retirement benefits for those hired prior to 1983; and partial disability benefits. Pursuant to Arkansas Code Annotated section 24–11–422(a)(1)(A) & (B) (Repl. 2002), the basic yearly pension benefit for

a retiring police officer with at least twenty years of service is one-half of his or her highest salary year.

In 1996, the Board authorized a series of monthly benefit increases for retired members, including those members participating in a Deferred Retirement Option Plan. The increases were in fixed-dollar amounts and were made applicable to members who were retired as of the effective date of each such payment, as shown below:

| August 1, 1996 | $ 75 monthly increase |
| February 28, 1997 | $125 monthly increase |
| May 14, 1998 | $100 monthly increase |
| March 1, 1999 | $150 monthly increase |
| March 1, 2000 | $ 50 monthly increase |
| January 1, 2003 | $ 50 monthly increase |
| January 1, 2004 | $ 90 monthly increase |
| January 1, 2005 | $ 50 monthly increase |
| January 1, 2007 | $ 75 monthly increase |

On September 15, 2006, appellants, who are retired police officers who did not receive the benefit of all the increases, filed suit challenging the monthly benefit increases. In their second amended complaint, appellants alleged (1) that the benefit increases were not authorized by section 24–11–102(a); (2) that the Board breached its fiduciary duties by not giving benefit increases to each retiree; (3) that the Board breached its fiduciary duties by making the increases payable in fixed-dollar amounts, rather than as a percentage of earnings as contemplated by statute; (4) that, to the extent that section 24–11–102(a) authorizes the payment of increased benefits to retired members without providing commensurate increases to future retired members, the statute violates the Equal Protection Clause of the Arkansas Con-

stitution; and (5) that, to the extent that section 24–11–102(a) invests the Board with unbridled discretion to make additional retirement payments in fixed-dollar amounts, the statute represents an unlawful delegation of legislative authority. Appellants sought declaratory judgment for each of these propositions; an order that the benefit increases apply to each of them, along with a schedule for the recoupment of payments from any overpaid retirees; and an injunction against the Board to prevent it from implementing any future payment arrangements that vary from a structure ordered by the court. The Board answered the complaint, denying each material allegation.

Thereafter, the parties filed a stipulation of facts and agreed to submit the issues to the circuit court for decision on cross-motions for summary judgment. Based on the motions, the briefs, the stipulation, and the affidavit of Farris Hensley, the circuit court entered an order granting the Board's motion for summary judgment. The circuit court ruled that the payment of additional, fixed-dollar monthly payments only to retired members was authorized by Arkansas Code Annotated section 24–11–102(a). The court also found that section 24–11–102 did not constitute an unlawful delegation of legislative authority. The circuit court ruled that section 24–11–102(a) permitted the Board to increase benefits to current but not future retirees and that the statute, as applied, did not violate the Equal Protection Clause of the Arkansas Constitution. The court also found that the pension fund was not a trust. The court stated that, in any event, a three-year statute of limitations barred appellants' claims with regard to benefits paid prior to 2003. This timely appeal followed.

## II. *Standard of Review*

Normally, on a summary-judgment appeal, the evidence is viewed in the

light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Aloha Pools & Spas, Inc. v. Employer's Ins. of Wausau,* 342 Ark. 398, 39 S.W.3d 440 (2000). But in a case where the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Id.* When parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *McCutchen v. Patton,* 340 Ark. 371, 10 S.W.3d 439 (2000).

### III. *Arkansas Code Annotated section 24–11–102*

The issues in this case center on section 24–11–102. Subsection (a) of the statute provides as follows:

The board of trustees of a municipal firemen's relief and pension fund and the board of trustees of a policemen's pension and relief fund are authorized to increase benefits for future or current retired members and beneficiaries of the firemen's relief and pension fund or policemen's pension and relief fund.

Subsection (b) of the statute states that, before granting any increase, the Board must strictly comply with the following conditions:

(1) The board of trustees of the firemen's relief and pension fund or policemen's pension and relief fund shall adopt a resolution approved by not less than three-fourths (3/4) of the membership of the board of trustees, outlining the proposed increase in benefits;

(2)(A) The action proposed by the board of trustees under the resolution shall be determined by actuarial evaluations to be actuarially feasible to the extent that the unfunded liabilities resulting from

the proposed increase in member or beneficiary benefits under the fund will be funded over a period of not more than thirty (30) years, pursuant to rules promulgated by the Arkansas Fire and Police Pension Review Board, based on the current available and known revenue or income sources available to the retirement and pension fund.

(B) The actuarial valuations shall be made by an actuary who is a member of the American Academy of Actuaries and who is employed by the review board.

(C) The Executive Director of the Arkansas Fire and Police Pension Review Board shall state the actuarial findings in writing to the board of trustees and shall certify the appropriate action to be taken;

(3)(A) A copy of the resolution adopted by the board of trustees of the firemen's relief and pension fund or policemen's pension and relief fund outlining the proposed increase in member or beneficiary benefits is filed with the executive director, who shall determine that an actuarial valuation has been made in accordance with the provisions of this subchapter and that the actuarial valuation had determined that the proposed increase in benefits may be funded, over a period of time set forth in subdivision (b)(2)(A) of this section, based on available or defined revenue sources of the relief fund, in which event the executive director may approve the proposed increase to member beneficiary benefits under the firemen's relief and pension fund or policemen's pension and relief fund.

(B) The board of trustees of the firemen's relief and pension fund or policemen's pension and relief fund shall comply with the appropriate action as approved by the executive director; and

(4)(A) A copy of the resolution adopted by the board of trustees, a copy of the actuarial valuation, and a copy of the action taken by the executive director is filed with the circuit clerk and the city clerk of the county and city in which the firemen's relief and pension fund or policemen's pension and relief fund is located.

(B) All actions taken by the executive director shall be subject to review and acceptance by the review board.

(c) If it is determined by the review board that a local pension plan is not complying with the provisions of law governing benefit increases, the executive director shall certify that noncompliance to the Insurance Commissioner, and the commissioner shall withhold all moneys otherwise due the plan from the state until compliance is achieved.

In the joint stipulation of facts, the parties agreed that the Board had strictly complied with these conditions before implementing the increase in benefits.

## IV. *Increase in Fixed–Dollar Amounts*

■ Appellants' first argument on appeal is that the relevant statutes do not permit the Board to increase pension benefits in a fixed-dollar amount. Appellants contend that, because section 24–11–422 calculates pension benefits based on a percentage of a retiree's highest salary, any increase in pension benefits must come in the form of a percentage increase, but not a fixed-dollar amount. Appellants point out that some benefits are based on percentages, while others, such as funeral benefits, are based on a fixed amount. They then assert that the phrase *expressio unius est exclusio alterius*[1] requires any increase to take the same form as the

benefit established by statute. Further, appellants argue that the increases authorized by the Board have the effect of changing the nature of the pension-benefit structure crafted by the legislature. Appellants contend that, because the increases took the form of a fixed-dollar amount, the Board in essence created a new and different benefit than those authorized by statute. Appellants assert that their argument is supported by Arkansas Code Annotated section 24–11–416 (Repl.2002), which provides that "[i]f at any time there should not be sufficient money in the fund to pay each person a full amount to which he or she may be entitled, the beneficiaries shall be paid by prorating the fund available among them."

In rejecting this argument, the circuit court ruled that section 24–11–102(a) permits the Board to increase benefits without specifying any particular benefit and without stating whether the increases are to be stated in terms of percentages or fixed amounts. The court thus reasoned that the statute permits increases without reference to any of the enumerated benefits and that the statute does not prohibit increases in the manner accomplished by the Board.

■ We review statutory interpretation de novo, as it is for this court to determine the meaning of a statute. *Forrester v. Martin*, 2011 Ark. 277, 383 S.W.3d 375. Our rules of statutory construction are well settled:

The basic rule of statutory construction is to give effect to the intent of the legislature. Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used.

1. Under the doctrine of *expressio unius est exclusio alterius,* the express designation of one thing may be properly construed to mean the exclusion of another. *Larry Hobbs Farm Equip., Inc. v. CNH Am., LLC,* 375 Ark. 379, 291 S.W.3d 190 (2009).

In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. We construe the statute so that no word is left void, superfluous or insignificant, and we give meaning and effect to every word in the statute, if possible. *Dachs v. Hendrix,* 2009 Ark. 542, at 7, 354 S.W.3d 95, 100 (quoting City of *Little Rock v. ₈Rhee,* 375 Ark. 491, 495, 292 S.W.3d 292, 294 (2009)) (citations omitted). We are not bound by the circuit court's determination of the statute's meaning; however, in the absence of a showing that the circuit court erred, its interpretation will be accepted as correct on appeal. *Scoggins v. Medlock,* 2011 Ark. 194, 381 S.W.3d 781.

 Appellants have failed to convince us that the circuit court's interpretation is clearly wrong. Section 24–11–102(a) grants the general authority to "increase benefits" without specifying whether the increases are to be stated in terms of percentages or fixed amounts. Consequently, we perceive no legislative intent that the authorized increases must take any particular form. We also agree that the statute contains no language expressly prohibiting the type of increase approved by the Board. The Board in this instance increased the amount of monthly pension benefits, as permitted by the statute. Therefore, we cannot accept appellants' argument that the Board created a new type of benefit. The circuit court did not err in granting summary judgment to the Board on this basis.

## V. *Improper Delegation of Legislative Authority*

 Appellants claim that section 24–11–102(b) contains no standards governing the discretionary authority given the Board to increase benefits, and thus they argue that the statute constitutes an unconstitutional delegation of legislative power. We find no merit in this argument.

 This court has held that discretionary power may be delegated by the legislature to a state agency as long as reasonable guidelines are provided. *Holloway v. Ark. State Bd. of ₉Architects,* 352 Ark. 427, 101 S.W.3d 805 (2003). This guidance must include appropriate standards by which the administrative body is to exercise this power. *McQuay v. Ark. State Bd. of Architects,* 337 Ark. 339, 989 S.W.2d 499 (1999). A statute which in effect reposes an absolute, unregulated, and undefined discretion in an administrative agency bestows arbitrary powers and is an unlawful delegation of legislative powers. *Rose v. Ark. State Plant Bd.,* 363 Ark. 281, 213 S.W.3d 607 (2005).

 As the parties challenging the legislation, it is appellants' burden to prove its unconstitutionality, and all doubts will be resolved in favor of the statute's constitutionality, if it is possible to do so. *City of Cave Springs v. City of Rogers,* 343 Ark. 652, 37 S.W.3d 607 (2001). An act will be struck down only when there is a clear incompatibility between the act and the constitution. *Id.*

The statute in question is not bereft of guidance. Subsection (b) sets out in detail the procedures that must be strictly followed before an increase can be implemented. First, the board of trustees must adopt a resolution outlining the proposed increase in benefits by a three-quarter majority. Any proposed increase must be supported by an independent actuarial valuation demonstrating actuarial feasibility to the extent that the unfunded liabilities resulting from the proposed increase in benefits will be funded over a period of not more than thirty years. The executive director is required to state the actuarial

findings in writing to the board of trustees and must certify the appropriate action to be taken. Also, a copy of the resolution adopted by the board of trustees must be filed with the executive director, who is to determine that a satisfactory actuarial valuation has been made, in which event the executive director may approve the proposed increase in benefits. A copy of the resolution adopted by the board of trustees, a copy of the actuarial valuation, and a copy of the action taken by the executive director must be filed with the circuit court and the city clerk. Finally, all actions taken by the executive director are subject to review and acceptance by the board of review.

With these guidelines in place, particularly the requirement of actuarial soundness, we cannot conclude that the statute grants unfettered discretion to the Board. Therefore, we affirm the circuit court's conclusion that the statute does not constitute an unconstitutional delegation of legislative authority.

## VI. *Breach of Fiduciary Duties*

Next, appellants contend that the Board breached its fiduciary duties by conferring benefits on some beneficiaries to the exclusion of others. They insist that the Fund is a trust and argue that the preferential treatment accorded to current retirees over future retirees violates its fiduciary duties of loyalty and impartiality found in the Arkansas Trust Code at Arkansas Code Annotated section 28–73–803 (Supp. 2011).[2] In dismissing this argument, the circuit court ruled that section 24–11–102(a) permits the Board to increase benefits for current retirees to the exclusion of future retirees and that the Board did not breach any fiduciary duty by taking action

that is authorized by statute. The court also found that the Fund was not a trust.

To reiterate, section 24–11–102(a) provides that the Board is authorized "to increase benefits for future *or* current retired members or beneficiaries." In its ordinary sense, the word "or" is a disjunctive particle that marks an alternative, generally corresponding to "either," as "either this or that"; it is a connective that marks an alternative. *Brown v. Kelton*, 2011 Ark. 93, 380 S.W.3d 361 (citing *McCoy v. Walker*, 317 Ark. 86, 89, 876 S.W.2d 252, 254 (1994)). According to the plain language of the statute, the Board was authorized to increase benefits to current retirees and not to future retirees. Thus, we must agree with the circuit court that the Board did not violate its fiduciary responsibilities by taking action that is expressly authorized by statute.

Appellants also take issue with the circuit court's finding that the pension fund is not a trust. They argue that Arkansas Code Annotated section 24–9–202 (Repl. 2002), which addresses the investment of local pension funds, uses the term "trust fund," and thus they contend that the legislature contemplated that the pension fund would be treated as a trust fund. Appellants further argue that, just because the statute might authorize differing treatment among beneficiaries, the legislature did not intend to relieve the Board of its fiduciary duties to all beneficiaries. Appellants contend that the legislature's adoption of the Arkansas Trust Code in 2005 is an expression of that intent and that section 28–73–803 requires the Board to act impartially when authorizing an increase in benefits.

**2.** Section 28–73–803 provides that, if a trust has two or more beneficiaries, the trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests.

■ The short answer to this argument is that the Arkansas Trust Code has no application ∟₁₂to acts that occurred prior to September 1, 2005. Ark.Code Ann. § 28–73–1106(a)(5). Because the Board increased benefits in 1996, the Trust Code does not apply. Even assuming, without deciding, that the principles embodied in the Trust Code are applicable, section 24–11–102(a) deals specifically with municipal policemen and firemen pension funds, and this statute explicitly authorizes the Board to favor current retirees over future ones. This court has long held that a general statute must yield to a specific statute involving a particular subject matter. *Comcast of Little Rock, Inc. v. Bradshaw,* 2011 Ark. 431, 385 S.W.3d 137.

## VII. *Equal Protection*

Appellants argue that section 24–11–102(a), as applied, violates equal protection by treating the two classes of retirees differently. Appellants contend that the increases approved by the Board lack a rational relationship to a legitimate objective under any set of facts and cannot be defended as a cost-of-living increase, as argued by the Board and found by the circuit court.

■ Article 2, section 3 of the Arkansas Constitution states, "The equality of all persons before the law is recognized, and shall ever remain inviolate; nor shall any citizen ever be deprived of any right, privilege or immunity; nor exempted from any burden or duty, on account of race, color or previous condition." The equal protection clause permits classifications that have a rational basis and are reasonably related to a legitimate government purpose. *Seagrave v. Price,* 349 Ark. 433, 79 S.W.3d 339 (2002). Equal protection does not require that persons be dealt with identically; it only requires that classification rest on real and ∟₁₃not feigned differences, that the distinctions have some relevance to the purpose for which the classification is made, and that their treatment be not so disparate as to be arbitrary. *Rose, supra.* When reviewing an equal-protection challenge, it is not this court's role to discover the actual basis for the legislation. *Id.* Rather, we consider whether there is any rational basis that demonstrates the possibility of a deliberate nexus with state objectives so that legislation is not the product of arbitrary and capricious government purposes. *Id.* If a rational basis exists, the statute or, in this case, the regulation, will withstand constitutional challenge. *Id.* Under the rational-basis test, legislation is presumed constitutional and rationally related to achieving any legitimate governmental objective under any reasonably conceivable fact situation. *Eady v. Lansford,* 351 Ark. 249, 92 S.W.3d 57 (2002). The burden is on the party challenging the legislation to prove its unconstitutionality. *Id.*

In response to appellants' equal-protection challenge to the statute, the Board submitted the affidavit of Farris Hensley, a retired police officer of the Little Rock Police Department. Hensley had served as a trustee of the Fund since 1987 and had held the post of secretary for the past fifteen years. In addition, he currently serves as the chairperson of the Pension Review Board. In his affidavit, Hensley stated that in 1996 the Board was aware that current retired members were receiving meager monthly benefits and that the rules governing the benefit plan contained no provision for any cost-of-living adjustments once a member retired. He said that, in cases of members who retired years ago, their benefits were frozen and would never increase. Hensley stated that the Board perceived an unfairness in these ∟₁₄circumstances, especially since it was known that many of the retirees were not

eligible for social security retirement benefits. Further, Hensley averred that, since the amount of pension benefits are calculated on the highest year of salary prior to retirement, those future retirees who were still working were continuing to receive annual cost-of-living increases with the result that their pensions would, for the most part, greatly exceed the benefit amounts of those who had already retired. He stated that, given the disparity between the amount of benefits payable to current and future retirees, the Board chose to make the increases in fixed-dollar amounts to assist those retirees at the lowest benefit levels to narrow the gap between those members then retired and those who would retire in the future.

As stated, the equal protection clause does not prohibit unequal treatment. To pass muster, the clause only requires a rational basis for such treatment. The Board's decision to authorize the increases to benefit those members who had retired at an earlier time was based on the perceived need to assist those retirees who were not eligible to receive cost of living increases. As such, there is a rational basis for the Board's disparate treatment of current and future retirees. We affirm on this point.

## VIII. *Statute of Limitations*

The circuit court found that the three-year statute of limitations found at Arkansas Code Annotated section 16–56–105 (Repl.2005) applied to appellants' claims. Because appellants filed their complaint on September 15, 2006, the court ruled that the actions of the Board occurring before September 15, 2003, were barred by the statute of limitations. On appeal, appellants contend that the statute of limitations does not begin to run in trust cases until there has been a repudiation of the trust brought home to the beneficiaries. In the alternative, appellants assert that the five-year statute of limitations for any cause not specifically governed by a limitations provisions governs this case.

We have no need to address this issue. The question would be important only if we were to conclude that any of the previous issues had merit. Because appellants have not prevailed on any claim, it does not matter whether the statute of limitations would also serve as a bar to their claims. Any opinion we could offer would only be advisory. However, it is well settled that we will not issue an advisory opinion. *Nelson v. Ark. Rural Med. Practice Loan & Scholarship Bd.,* 2011 Ark. 491, 385 S.W.3d 762.

Affirmed.

JIM HANNAH, Chief Justice, concurring.

I concur in the decision to affirm the denial of Billy Joe Kelley's Rule 37.1 petition. However, this case should be affirmed based on a failure to meet the requirements of the first prong of the *Strickland* test. Counsel's representation did not fall below an objective standard of reasonableness. I do not agree that this case may be affirmed based on a lack of prejudice under the second prong of the *Strickland* test. Contrary to the majority's conclusion, the evidence of chlamydia was offered to point suspicion at Kelley and at no one else. It was highly prejudicial and was offered to identify Kelley as the perpetrator of the charged rape by showing that she was infected with chlamydia by sexual contact with Kelley.

In pretrial hearings, the State moved to preclude Kelley from arguing that the victim's stepbrothers infected her with chlamydia and for leave to put on evidence that Kelley refused a chlamydia test. In its opening statement, the State told the jury that Dr. Esquivel would testify that

the victim tested positive for chlamydia and that this was diagnostic of sexual assault, of which Kelley stood accused. Dr. Esquivel examined the victim to determine if the victim had been sexually assaulted. Dr. Esquivel is a physician and naturally treated the victim for the chlamydia, but in the context of this case, the issue of chlamydia was not only an issue of diagnosis, but was also a critical piece of evidence on which Dr. Esquivel based her opinion that the victim had been sexually assaulted. Dr. Esquivel testified as follows:

Q. Well, did you see any healing tissue anywhere?

A. No, no healing tissue except for the thin rimmed hymen. So I'm saying that it could indicate that there had been significant stretching of the tissue.

Q. It could?

A. It could.

Q. Not definitively?

A. Right.

Q. Not within a reasonable degree of medical certainty? Right?

A. Right.

Q. You wouldn't want to say that to the ladies and gentlemen of the jury?

A. Not based on that, but the fact that she had a positive sexually transmitted infection culture. That would raise the suspicion further.

Dr. Esquivel further testified that among the findings that "are 100 percent diagnostic for penetration or sexual assault, or abuse, are things such as . . . a sexually transmitted disease that would not have been able to have been contracted except by sexual means." The State was trying to show the jury that Kelley was the source of the chlamydia so that the jury would conclude that he had raped the victim. The evidence was highly prejudicial. Therefore, Kelley meets the requirements of the second prong of the *Strickland* test because he has shown that, had

counsel's representation fallen below the required standard, there was a reasonable probability that the outcome would have been different. *See Lee v. State,* 2009 Ark. 255, at 4, 308 S.W.3d 596, 601 (quoting *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674).

Nonetheless, this case should be affirmed because Kelley has failed to satisfy the first prong of the *Strickland* test, that counsel's representation fell below an objective standard of reasonableness. *See Lee,* 2009 Ark. at 3, 308 S.W.3d at 600 (quoting *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052). As the majority states, Kelley asserts that his trial counsel was ineffective for failure to obtain a ruling on his Confrontation Clause objection. Kelley's argument at trial was that he was being denied the opportunity "to confront the witness who actually tested the swab and says that it is chlamydia." On appeal, Kelley relies on *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). However, *Melendez–Diaz* was decided after Kelley was tried. In determining whether trial counsel's conduct is ineffective, the conduct is evaluated from counsel's perspective at the time. *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[C]ounsel's stewardship must be judged under the existing law at the time of trial and counsel cannot be deemed ineffective for failing to predict future developments or changes in the law." *Commonwealth v. Todaro,* 549 Pa. 545, 701 A.2d 1343, 1346 (1997). *Melendez–Diaz* is not relevant in determining whether counsel's conduct was ineffective on a date before the case was decided. Therefore, the decision of the circuit court should be affirm

DANIELSON, J., joins.