Cite as 2020 Ark. 352

# SUPREME COURT OF ARKANSAS

No. CV-19-979

| | |
|---|---|
| | Opinion Delivered: October 29, 2020 |
| SHELLY BUONAUITO, MARY WEEKS, VERLON ABRAMS, AND SARAH B. THOMPSON<br><br>APPELLANTS<br><br>V.<br><br>KEITH GIBSON, TOM SCHUECK, ROBERT S. MOORE, JR., ALEC FARMER, AND PHILIP TALDO, MEMBERS OF THE ARKANSAS STATE HIGHWAY COMMISSION; SCOTT E. BENNETT, DIRECTOR, ARKANSAS DEPARTMENT OF TRANSPORTATION; DENNIS MILLIGAN, TREASURER OF THE STATE OF ARKANSAS; ANDREA LEA, AUDITOR OF THE STATE OF ARKANSAS; LARRY W. WALTHER, DIRECTOR, ARKANSAS DEPARTMENT OF FINANCE & ADMINISTRATION; AND ASA HUTCHINSON, GOVERNOR OF THE STATE OF ARKANSAS<br><br>APPELLEES | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-18-7758]<br><br>HONORABLE MORGAN E. WELCH, JUDGE<br><br><u>REVERSED AND REMANDED</u>. |

**JOSEPHINE LINKER HART, Justice**

Shelly Buonauito, Mary Weeks, Verlon Abrams, and Sarah B. Thompson appeal

from an order of the Pulaski County Circuit Court dismissing their illegal-exaction suit

that sought to enjoin the expenditure of highway funds collected pursuant to Amendment

91 of the Arkansas Constitution for two projects that sought to improve six-lane portions

of interstate highways in Little Rock.

On appeal, they argue that (1) the plain and unambiguous language of Amendment 91 demonstrates that the funds generated by the amendment are to be used to construct and improve four-lane highways; (2) the circuit court erred by looking outside the language of Amendment 91 and the ballot title to ascertain voters' intent; (3) the circuit court improperly found that the term "four-lane highway" was not only ambiguous, but also erroneous; (4) the circuit court committed prejudicial and reversible error in relying upon documents that were not admitted at trial; and (5) even taking all the evidence presented at trial, there is no interpretation to go on except the clear and unambiguous language of Amendment 91. We reverse and remand.

In the November 6, 2012 general election, voters approved Issue 1. Issue 1 was one of three constitutional amendments referred to the voters by the legislature in the 2011 regular session. The measure, HJR 1001 of 2011 specified that the issue would be put to the voters as follows:

> Section 22. The proposition set forth shall be submitted for approval or rejection by the electors in substantially the following form:
>
> A TEMPORARY ONE-HALF PERCENT (0.5%) SALES AND USE TAX FOR STATE HIGHWAYS AND BRIDGES, COUNTY ROADS, BRIDGES AND OTHER SURFACE TRANSPORTATION, AND CITY STREETS, BRIDGES AND OTHER SURFACE TRANSPORTATION, WITH THE STATE'S PORTION TO SECURE STATE OF ARKANSAS GENERAL OBLIGATION FOUR- LANE HIGHWAY CONSTRUCTION AND IMPROVEMENT BONDS AND PERMANENTLY DEDICATING ONE CENT (1¢) PER GALLON OF THE PROCEEDS DERIVED FROM THE EXISTING MOTOR FUEL AND DISTILLATE FUEL TAXES TO THE STATE AID STREET FUND

On each ballot there shall be printed the following:

FOR a proposed constitutional amendment to levy a temporary sales and use tax of one-half percent (0.5%) for state highways and bridges, county roads, bridges and other surface transportation, and city streets, bridges and other surface transportation, with the state's portion to secure State of Arkansas General Obligation Four-Lane Highway Construction and Improvement Bonds in the total principal amount not to exceed $1,300,000,000 for the purpose of constructing and improving four-lane highways in the State of Arkansas, prescribing the terms and conditions for the issuance of such bonds which will mature and be paid in full in approximately ten (10) years, which payment in full shall terminate the temporary sales and use tax, describing the sources of repayment of the bonds and permanently dedicating one cent (1¢) per gallon of the proceeds derived from the existing motor fuel and distillate fuel taxes to the State Aid Street Fund.

AGAINST a proposed constitutional amendment to levy a temporary sales and use tax of one-half percent (0.5%) for state highways and bridges, county roads, bridges and other surface transportation, and city streets, bridges and other surface transportation, with the state's portion to secure State of Arkansas General Obligation Four-Lane Highway Construction and Improvement Bonds in the total principal amount not to exceed $1,300,000,000 for the purpose of constructing and improving four-lane highways in the State of Arkansas, prescribing the terms and conditions for the issuance of such bonds which will mature and be paid in full in approximately ten (10) years, which payment in full shall terminate the temporary sales and use tax, describing the sources of repayment of the bonds and permanently dedicating one cent (1¢) per gallon of the proceeds derived from the existing motor fuel and distillate fuel taxes to the State Aid Street Fund.

By the vote of the people, HJR 1001 of 2011 became Amendment 91 to the Arkansas Constitution.

Under Amendment 91, a temporary sales-and-use tax of one-half percent (0.5%) was levied. Seventy percent of the tax was earmarked for the state of Arkansas and the

remainder of the tax proceeds was dedicated to municipalities and counties. The intent of Amendment 91 was expressed as follows:

§ 1. Intent

The people of the State of Arkansas find that:

(a) The state has an outdated and inadequate system of highway funding that is unable to meet the severe and pressing needs to maintain and improve the state's system of state highways, county roads, and city streets;

(b) Increasing investment in the state highway system, county roads, and city streets will create jobs, aid in economic development, improve quality of life, and provide additional transportation infrastructure, including specifically, a four-lane highway construction plan designed to connect all regions of the state; and

(c) To provide additional funding for the state's four-lane highway system, county roads, and city streets, this amendment levies a temporary sales and use tax and authorizes general obligation highway construction and improvement bonds for the state's four-lane highway system.

Projects CA0602 and CA0608 were selected by the Arkansas Department of Transportation to be funded by Amendment 91 money. The projects were intended to improve portions of Interstate 30 and Interstate 630 in Little Rock. Both of these projects are to widen and improve portions of these interstate highways from six lanes to eight or more lanes.

Appellants, who are citizens and taxpayers of the state of Arkansas, sought to block the projects. They filed an illegal-exaction lawsuit in which they prayed to enjoin the expenditure of funds from the "Arkansas Four-Lane Highway Construction and Improvement Bond Account" ("the Bond Account") on Projects CA0602 and CA0608, and for the restoration of funds to the Bond Account that have been expended on those

projects. Appellants' rationale for their suit was that the projects are not "four-lane highway improvements" as required by Amendment 91, section 2(g)(2) of the Arkansas Constitution.

Both parties filed motions for summary judgment. The circuit court found that the phrase "four-lane highway system" as used in the amendment was ambiguous and denied summary judgment. The circuit court also found, however, that the I-30 project is a bridge project and is therefore covered by Amendment 91. A bench trial followed.

Appellants filed a motion in limine arguing that the "Court's analysis should be limited to the ballot title and the language of Amendment 91" and the court should not consider extrinsic evidence. The motion in limine was denied. After the trial, on September 4, 2019, the circuit court entered a corrected and substituted opinion and judgment in which it found "that the intent of Amendment 91 was to provide for funding for state highways." Accordingly, the court found that the funds spent on the I-630 project were used in accordance with the intent of Amendment 91. As a result, the court found that appellants failed to show an illegal exaction and dismissed their claim with prejudice. Appellants timely filed a notice of appeal.

An illegal exaction is the imposition of a tax or the expenditure of public funds that is not authorized or which is contrary to law. *Hartwick v. Thorne*, 300 Ark. 502, 780 S.W.2d 531 (1989). Article 16, section 13 of the Arkansas Constitution confers the right upon any citizen to institute suits in his or her own behalf and on behalf of all other interested citizens to protect against any illegal exaction. *Id.* Pursuant to this cause of action, citizens

may enjoin the misapplication of public funds. *Id.*

Although appellants briefed five separate points, the matter before us may be fairly distilled down to a single issue: "Did the circuit court err in finding that Amendment 91 authorized spending the special tax on projects CA0602 and CA0608?" Disposition of this issue requires us to construe Amendment 91. We review the circuit court's interpretation of the Arkansas Constitution de novo; this court is not bound by the circuit court's decision. *Clark v. Johnson Reg'l Med. Ctr.*, 2010 Ark. 115, 362 S.W.3d 311. When we construe a provision of the Arkansas Constitution, if the language of the provision is plain and unambiguous, each word must be given its obvious and common meaning, and neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision. *Ghegan & Ghegan, Inc. v. Weiss*, 338 Ark. 9, 991 S.W.2d 536 (1999).

We note first that the stated intent of Amendment 91 as found in the plain text of section 1(c) is "[t]o provide additional funding for the state's *four-lane highway system*, county roads, and city streets." (Emphasis added.) Further, this same section specifies what the tax will be used for: "this amendment levies a temporary sales and use tax and authorizes general obligation highway construction and improvement bonds for *the state's four-lane highway system.*" (Emphasis added.) Section 4(a) of Amendment 91 explicitly specifies how the temporary tax may be spent:

> (1) Accelerating *four-lane highway* improvements in progress or scheduled as of January 1, 2011;

6

(2) Funding new *four-lane highway* improvements not in progress or scheduled as of January 1, 2011;

(3) Providing matching funds in connection with federal highway programs for *four-lane highway* improvements; and

(4) Paying the costs of issuance of the bonds.

(Emphasis added.) In a short definitions section, Amendment 91, section 2(g)(1) states that "four-lane highway improvements" are "construction of and improvements to: (A) Four-lane roadways." Section 2(g) also lists bridges, tunnels, engineering, rights-of-way, and "other related capital improvements and facilities appurtenant or pertaining thereto." § 2(g)(B)–(F). However, in context, all of these "improvements" are restricted to four-lane highways.[1]

The term "four-lane highway" appears more than thirty times in Amendment 91. The phrase is given a specific meaning that Is plain and unambiguous. Conspicuously absent from

---

[1]Contrary to the dissent's suggestion, we are satisfied that a bridge is always a bridge. Whether that bridge is legally funded, however, is an entirely different question. The dissenting opinion makes much of Amendment 91, section 2(g)(1)'s choice of punctuation, but it fails to follow our rule of interpretation requiring a constitutional provision to be read in such a way as to avoid absurd results. *State v. Older*, 361 Ark. 316, 206 S.W.3d 818 (2005). While grammar rules can and do provide a guide to interpretation, they do not provide an avenue to abandon common sense. If, as the dissent contends, section 2(g)(1) encompasses all bridges regardless of the number of lanes, it follows that each item in that section must be read in the same manner. Thus, as an example, any and all spending on (D) "Engineering" would be permissible, including that related to Project CA0608, the I-630 expansion. By endorsing an inconsistent position in this case, the dissent attempts to have its cake and eat it too. The Highway Department cannot have unfettered liberty to allocate funds to "bridges" but not "engineering." Amendment 91's ballot title expressly stated that it was "for the purpose of constructing and improving four-lane highways[.]" The voters, in approving this Amendment, did not intend to give the carte blanche discretion that the dissent's reading would allow.

7

Amendment 91is any reference to six-lane interstate highways. Given the repeated reference to "four-lane state highways," we must conclude that the maxim, "*expressio unius est exclusio alterius*" applies to the case-at-bar. The phrase *expressio unius est exclusio alterius* is a fundamental principle of construction that the express designation of one thing may properly be construed to mean the exclusion of another. *Gazaway v. Greene Cnty. Equalization Bd.*, 314 Ark. 569, 575,864 S.W.2d 233, 236 (1993).The repeated reference to "four-lane highways" and the lack of a specific reference to six-lane interstate highways means the Amendment 91 funds cannot be used for the latter. Certainly, if the General Assembly intended that the tax imposed by Amendment 91 be used for major improvements to six-lane interstate highways, such as projects CA0602 and CA0608, the drafters could have expressly so stated.

We hold that the circuit court erred in finding that Amendment 91 funds were legally designated for projects CA0602 and CA0608 and dismissing appellants' illegal-exaction suit. We therefore reverse and remand this case to the circuit court for entry of an order consistent with this opinion.

Reversed and remanded.

WOOD, J., concurs in part and dissents in part.

WOMACK, J., concurs without opinion.

**RHONDA K. WOOD, Justice, concurring in part and dissenting in part.** When is a bridge not a bridge? Amendment 91 allows the use of bond funds for bridges. Project

CA0602 includes reconstructing the I-30 bridge in Little Rock.[1] So why does the majority hold Amendment 91 cannot be used to finance Project CA0602? The majority demolishes a massive construction project without compelling analysis. Even though Amendment 91 allows spending on bridges, the majority restricts spending to those bridges having only four lanes. This holding contradicts the Amendment's plain language and our rules of textual construction. I dissent from this portion of the majority's opinion.[2]

How does the majority reach its conclusion that bridge projects must be limited to four lanes? The majority claims the maxim *expressio unius est exclusio alterius* applies.[3] But the majority misapplies it.   In ordinary English, the leading treatise describes the majority's

---

[1]The parties agreed that the I-30 project, or "Project CA0602," is located at the I-30 Arkansas River Bridge in Little Rock. The project "would generally consist of reconstructing the existing six-lane roadway . . . while adding two decision lanes in each direction that ultimately feed into the C/D lanes located at the I-30 Arkansas River Bridge."

[2]I agree with the majority that Project CA0608 was not permitted because it was a six-lane roadway that would be expanded to eight lanes. The Amendment does not permit spending on six-lane roadways that are not tunnels or bridges. For this reason, I concur in part and dissent in part.

[3]The majority attempts to bolster its analysis by quoting Amendment 91's ballot title, as it if had some operative effect. In *Steele v. Thurston*, we stated that "any ballot title offered [by legislative referral] is intended to identify and distinguish the amendment rather than inform the voter." 2020 Ark. 320, at 4 (referencing *Forrester v. Martin*, 2011 Ark. 277, at 5, 383 S.W.3d, 375, 379). This court has consistently held that legislative-referred ballot titles merely help voters identify between the different amendments on the ballot and do not explain the content within. *Id.* For the majority to now suggest otherwise in a footnote is a sea change since just a few weeks ago.

Latin maxim as the negative-implication canon.[4] Yet how does the Amendment's use of the term "bridge" imply the exclusion of the term "bridge"? The majority looks at the fact that the drafters used "four-lane" in sections but did not mention "six-lane" roadways. I agree with the majority that the bridge-free, six-lane I-630 project was prohibited for this reason.[5] But the negative-implication canon has no place when the very thing to be funded—bridges—appears explicitly in the constitutional text.[6] "The force of any negative implication . . . depends on context."[7]

---

[4]Antonin Scalia & Bryan Garner, Reading the Law: The Interpretation of Legal Texts, 107 (2012).

[5]The majority perceives my position here as inconsistent. Quite the contrary: had the Commission made the alternative argument that certain expenditures within the I-630 project fit the Amendment's definition and thus expenses for engineering were also permitted, I would have agreed. Instead, its argument was all or nothing for the project, which involved more than expenditures on four-lane roadways, bridges, tunnels, engineering, and rights-of-ways. The parties never developed the record in a way that certain expenditures for engineering could be authorized separate from the project as a whole. The majority's attempt to make this case about "engineering" is a red herring.

[6]We have employed this canon before in its proper context. These cases reflect that proper use of the canon is when there is an absence of the term from the text. Here, the drafters explicitly included bridges without further restriction; therefore, the canon does not apply. In one case we interpreted the Arkansas Franchise Practices Act, which prohibited the termination of a franchise without good cause. *Larry Hobbs Farm Equip., Inc. v. CNH Am., LLC*, 375 Ark. 379, 383, 291 S.W.3d 190, 194 (2009). "Good cause," was a defined term that included enumerated occurrences. *Id.* at 384, 291 S.W.3d at 194. We concluded that because market withdrawal was not included, it could not justify termination of a franchise. *Id.* We reached a similar conclusion when a statute exempted "conservation easements" from county-land sale procedures. *MacSteel Div. of Quanex v. Ark. Okla. Gas Corp.*, 363 Ark. 22, 29, 210 S.W.3d 878, 882 (2005). We concluded ordinary easements were not exempt and, applying the canon, reasoned "if the legislature had intended to exclude easements other than conservation easements . . . it could have done so." *Id.* at 31, 210 S.W.3d at 883. We also employed the canon when a former version of

10

Legal interpretation should always begin with the plain language of the text. Here, Amendment 91, section 4 authorized the issuance of bonds for the purpose of "funding new four-lane highway improvements."[8] The parties agree that section 5 states the proceeds could be used for these purposes.[9] Amendment 91's text authorizes spending on "four-lane highway improvements."[10] This is a defined term that includes "bridges."[11] This is the exact language:

> "Four-lane highway improvements" means construction of and improvements to:
>
> (A) Four-lane roadways;
>
> (B) Bridges;
>
> (C) Tunnels;
>
> (D) Engineering;
>
> (E) Rights-of-way; and

---

the arbitration act provided the circumstances under which an appeal could be taken. Because the statutory list did not include an order granting a motion to compel arbitration, we held a party could not appeal from that order. *Chem-Ash, Inc. v. Ark. Power & Light Co.*, 296 Ark. 83, 85, 751 S.W.2d 353, 354 (1988).

[7]*Marx v. General Revenue Corp.*, 568 U.S. 371, 381 (2013).

[8]Ark. Const. amend. 91, § 4(a)(2).

[9]Ark. Const. amend. 91, § 5(2).

[10]Ark. Const. amend. 91, § 4(a)(1), (2).

[11]Ark. Const. amend. 91, § 2(g)(1)(B).

(F) Other related capital improvements and facilities appurtenant or pertaining thereto, including costs of right of way acquisition and utility adjustments.[12]

The drafters limited roadways to "four-lane" in subsection (A). Had the drafters intended to similarly restrict bridges in subsection (B), they would have used the term "four-lane bridges." The operative text from the Amendment in section 4(a)(2), with the defined term inserted, should thus read as follows: the bond proceeds could be used "for the purpose of funding new construction of and improvements to bridges." This plain construction indisputably encompasses the I-30 bridge project.

Not only does the canon contradict the majority's result, but so do ordinary principles of grammar and logic. First, each definition is set off from the others and separated by a parenthetical marker and a semicolon. We should always treat "[p]unctuation [as] a permissible indicator of meaning."[13] "Periods and semicolons insulate words from grammatical implications that would otherwise be created by the words that precede or follow them, and parentheses similarly isolate the material they contain."[14] The drafters' decision to isolate "bridges" in its own subpart shows that it should be read distinctly and that bridges, unlike "roadways," could exceed four-lanes. The drafters shielded each definition from the others, conveying a distinct meaning for all.

---

[12]Ark. Const. amend. 91, § 2(g)(1).

[13]Scalia & Garner, *supra* n.4 at 161.

[14]*Id.* at 162.

Second, the "four-lane" limitation in the defined term "four-lane highway improvements" cannot logically apply to every subsection equally. If it is so clear that the "four-lane" from "four-lane highway improvements" modifies all subparts, why did the drafters redundantly define "roadways" as "four-lane roadways"? That construction produces nonsensical results. Where exactly are the "four-lane, four-lane roadways" for which the majority now holds the Amendment authorizes spending? Instead, the Amendment's plain language authorizes spending for "bridges" without qualification. Applying a plain-language approach, I would hold that the Commission's expenditures on the I-30 bridge project were constitutionally authorized.[15]

*Denton & Zachary, PLLC*, by: *Justin C. Zachary* and *Joe Denton*, for appellants.

*Vincent P. France*, Ass't Att'y Gen.; and *Rita S. Looney*, ARDOT Chief Legal Counsel; and *Mark Umeda*, ARDOT Attorney, for appellees.

---

[15]When a project includes improvements to the six-lane roadways leading up to the bridge, subsection (F) provides ample justification for spending on "other capital improvements . . . appurtenant or pertaining" to the bridge.